**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JONATHAN N. WATERS | ) | Case No. 14 CV 1704 |
| | ) | |
| Plaintiff, | ) | Judge James L. Graham |
| | ) | |
| v. | ) | Magistrate Judge Terence P. Kemp |
| | ) | |
| MICHAEL V. DRAKE, M.D. et al, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S SUR-REPLY TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

In its March 23, 2015 Order, Doc. No. 23 ("Order"), the Court requested that the parties

provide further briefing on the following three issues:

1) Whether the University has control over the content of *The Ohio State University Marching Band Statement of Policies and Procedures*;

2) The standard for terminating the employment of a non-tenured faculty member under the Ohio Administrative Code and *Rules of the University Faculty*; and,

3) Whether there has been any subsequent state or federal cases addressing whether a written at-will employment agreement can be modified by an implied contract or promissory estoppel under Ohio law.

As will be discussed in more detail below, The Ohio State University ("OSU") does

exercise control over the policies and procedures of its individual units, including the Marching

Band, and has the authority to reject any unit policy it deems inconsistent with overall university

policies.  Further, the substantive and procedural protections set forth in the Ohio Administrative

Code and the *Rules of the University Faculty* apply to all faculty members, regardless of their

tenure status.  And, finally, subsequent state and federal cases addressing whether a written at-will employment agreement can be modified by an implied contract or promissory estoppel under Ohio law are consistent with the conclusion in *DeSanzo v. Titanium Metals Corp*., 351 F. Supp. 2d 769, 788 (S. D. Ohio 2005) (Sargus, J.) that the implied contract and promissory estoppel exceptions apply to both written and oral at-will employment agreements.

1.    **The University Has Control Over The Content Of** *The Ohio State University Marching Band Statement of Policies and Procedures.*

The Court has requested further briefing on whether OSU has control over the content of *The Ohio State University Marching Band Statement of Policies and Procedures* ("*Statement of Policies and Procedures*"), directed at the issue of whether OSU itself has recognized or acknowledged the Band Director's status as a faculty member.

The answer is yes.  The Ohio State University's ("OSU") policies confirm that OSU has absolute control over the policies generated by its individual units.  According to OSU's website, individual units, such as the Marching Band, "may maintain additional policies applying only to that unit, that are not in conflict with university-wide policies."   *See* http://policies.osu.edu/. These policies "do not override university-wide policies."  *Id*.  Although unit operating procedures may be more restrictive than university policies, the procedures must "remain consistent with [university policies] and with relevant statutes, regulations, bylaws, or rules." *See* http://policies.osu.edu/about.html.

Because OSU has ultimate control over the individual operating units' policies and procedures, including those of the Marching Band, it has the authority to the reject the policy of any unit that it deems inconsistent with overall university policy.  Therefore, by not rejecting the *Statement of Policies and Procedures*, OSU endorsed them.

2.    **Tenured And Non-Tenured Faculty Members Are Afforded The Same Procedural Protections.**

The Court has also requested further briefing on the standard for terminating the employment of a non-tenured faculty member under the Ohio Administrative Code and *The Ohio State University Rules of the University Faculty* (*"Rules of the University Faculty"*), including how "faculty member" is defined.

Section 3335-5-04 of both the Ohio Administrative Code and the *Rules of the University Faculty*, governs the policies and protections afforded OSU faculty members.  These protections apply to all faculty members, regardless of tenure,[1] and include notice, multiple opportunities to be heard, appellate rights and the requirement that all findings be based on clear and convincing evidence.  *See* O.A.C. §3335-5-04(E)-(J); *Rules of the University Faculty* 3335-5-04(E)-(J).  The *Rules* further require that any disciplinary sanctions be "commensurate with the nature of the complaint."   O.A.C. §3335-5-04(E)(2), (3); *Rules of the University Faculty* 3335-5-04(E)(2).  And, the rights of the president and provost to terminate employment are substantively and procedurally limited.  *See* O.A.C. §3335-5-04(G), (I); *Rules of the University Faculty* 3335-5-04(G), (I).

OSU's longstanding approach to the Band Director position reinforces its recognition of the faculty status of the position.[2]  For instance, Waters' predecessors as Director, most recently Jon Woods and Paul Droste, were tenured members of OSU's faculty and are currently considered Emeritus Faculty.  *See* http://music.osu.edu/people/emertius.  OSU also designates

---

[1] *See* O.A.C. §3335-5-19 ("the term 'faculty' shall include persons appointed by the board of trustees with tenure-track, non-tenure track, and emeritus faculty titles on full or part-time appointments, with or without salary").  *See also*, *Rules of the University Faculty* 3335-5-19.

[2] *Plaintiff's Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings* makes specific allegations and contains additional support for the assertion that Waters had become faculty, such as his teaching classes and assigning grades.  *See Plaintiff's Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings* at 17-19; *see also Complaint*, Doc. No. 1 at Page ID 441-442.  We will not repeat, but incorporate by reference those allegations and that support.

its current interim director as a faculty member.  *See* https://music.osu.edu/bands/resources/faculty.  And, OSU's current job posting and Leadership Profile for the Director of Marching and Athletic Bands position identifies it as a tenure-track faculty position.  *See* http://artsandsciences.osu.edu/facultypositions, Music, Associate Director of Bands/Director of Marching and Athletic Bands, Assistant, Associate or Full Professor Position Overview[3] and Description.[4]   Finally, OSU continues to identify Waters as faculty on its website. *See* http://music.osu.edu/bands/history.

Waters, like his predecessors and successor, was a faculty member both in name and practice.  OSU publically referred to Waters as Band Faculty and required Waters to perform the same duties as the faculty Band Directors that preceded him.  As faculty, Waters should have been afforded procedural and substantive protections prior to his termination.

**3.     The *DeSanzo* Line Of Cases Is Analogous To This Case.**

Finally, the Court has requested briefing on any subsequent Ohio or federal cases addressing whether a written at-will employment agreement can be modified by an implied contract or promissory estoppel.

In fact, as the Court's comments recognize, Ohio law regarding this issue is not as unequivocal as Defendants make it appear.  Since Judge Sargus's opinion in *DeSanzo v. Titanium Metals Corp*., 351 F. Supp. 2d 769, 788 (S. D. Ohio 2005), a number of Ohio cases have addressed whether a promissory estoppel or implied contract claim may survive despite a written employment-at-will agreement.   For instance, in *Shelton v. Ohio Edison*, No.

---

[3]http://artsandsciences.osu.edu/sites/artsandsciences.osu.edu/files/OSUMB%20Position%20Overview.docx

[4]http://artsandsciences.osu.edu/sites/artsandsciences.osu.edu/files/OSUMB%20AB%20Director%20Profile%20FINAL.docx.   We recognize that the interim director appointment and current job posting post-dates Waters' employment.   They are nonetheless relevant evidence of the university's overall – and historical – approach to the Band Director position.

5:08CV03008, 2009 WL 6339948 (N. D. Ohio June 15, 2009), the Court held that "the promissory estoppel exception applies to both oral employment at-will agreements and written employment at-will agreements." *Id.* at \*6, citing *Gouge v. BAX Global, Inc.*, 252 F.Supp.2d 509, 519 (N. D. Ohio 2003). *See also*, *Micek v. Flightsafety Intern., Inc.*, No. 2:03-cv-1015, 2006 WL 22179, \*9 (S.D.Ohio Jan. 4, 2006) (Holschuh, J.) ("Plaintiff's promissory estoppel claim is not necessarily foreclosed by the fact that he signed documents acknowledging that he was an at-will employee…").

Several cases go the other way, but may be reconciled with *DeSanzo*. These cases simply confirm, as does *Lane v. Terminal Freight Handling Co.*, 775 F. Supp. 1101 (S. D. Ohio 1991), that this determination is fact-specific. *See Lane* at 1104 (exceptions did not apply where in addition to acknowledging at-will employment, plaintiff's employment application confirmed his "**understand[ing] that no unit manager or representative of Terminal Freight Handling Co. other than the President or Vice-President of the Company, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing**") (emphasis added). This acknowledgement negated an implied contract and/or promissory estoppel as a matter of fact.[5]

*Vickers v. Wren Industries, Inc.*, 2d Dist. Montgomery No. CIV.A. 20914, 2005-Ohio-3656, may also be reconciled with *DeSanzo*. There, the plaintiff's implied contract and promissory estoppel claims failed because they were based upon oral representations made **prior to** his execution of an "Associate Manual Receipt and Acknowledgement form, which specifically stated that "**[s]ince the information, policies, and benefits described here are**

---

[5] Judge Holschuh's decision in *Micek* – acknowledging that a promissory estoppel claim may survive an at-will employment agreement – demonstrates that his decision in *Lane* was based on the specific facts of that case. It shows that Judge Holschuh did not intend his decision in *Lane* to foreclose estoppel and implied contract claims in all cases involving at-will employment agreements.

**necessarily subject to change, I acknowledge that revisions to the manual may occur, except to Jena Tool's policy of employment-at-will**.'" *Id.* at ¶44 (emphasis added). For obvious reasons, the written acknowledgement trumped the prior oral representations.

Similarly, in *Seifert v. Graphic Packaging Intern., Inc*., No. 1:10 CV 2440, 2011 WL 3862109 (N. D. Ohio Sept. 1, 2011), aff'd 486 Fed. Appx. 594 (6th Cir. 2012), the court held that the Seifert's breach of implied contract and promissory estoppel claims failed because, unlike Waters' Employment Letter, Seifert's at-will agreement specifically stated that **"[a]ny promises or representations, either oral or written, that are not contained in this letter are not valid and are not binding on the company**." *Id.* (emphasis added). *See also*, *e.g., Hagan v. Solideal Tire, Inc*., No. 2011 WL 3444265 (N. D. Ohio Aug. 8, 2011) (plaintiff could not have reasonably relied on oral promises where he signed an employee handbook acknowledging that he was at-will, would always be at-will, and that any employment contract, whether verbal or written, was only valid if entered into by the Chief Executive Officer); *Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F.Supp.2d 706, 729-30 (S. D. Ohio 2006) (promissory estoppel claim failed where plaintiff could not identify an express or implied promise of continued employment and her Employment Agreement contained an at-will provision and integration clause); *Kiraly v. Office Max, Inc*., 8th Dist. Cuyahoga No. 91311, 2009-Ohio-863, ¶¶41-42 (implied contract claim failed where plaintiff's at-will agreement contained a disclaimer acknowledging his understanding that "neither this handbook nor any other written or verbal communication by management representative of Office Max is intended to create a contract of employment"); *Micek*, 2006 WL 22179 at *8 (breach of implied contract claim failed where plaintiff acknowledged that only the company's president could authorize an employment contract altering his at-will status).

Here, there is no provision in Waters' Employment Letter that prohibits or restricts any subsequent amendment of the agreement.  His Employment Letter simply states that his employment "is at-will, and may be ended at any time by either [him] or the university."  This language is most analogous to that in *DeSanzo* where the offer of employment letter stated, "[t]his offer, if accepted, will create an employment-at-will relationship…[i]t is not intended nor should it be construed as a contract for continued employment."  *Id.*, 351 F.Supp.2d at 773. Thus, as in *DeSanzo*, the at-will provision in Waters' Employment Letter does not vitiate his claim.

For the foregoing reasons, as well as those raised in *Plaintiff's Memorandum In Opposition To Defendants' Motion For Judgment On The Pleadings*, Defendants' motion for judgment on the pleadings should be denied.

Respectfully submitted,

*s/ David F. Axelrod*
David F. Axelrod (0024023), Trial Attorney
James M. Petro (0022096)
Mark D. Wagoner, Jr. (0068577)
Katherine S. Decker (0085600)
SHUMAKER, LOOP & KENDRICK, LLP
Huntington Center – Suite 2400
41 South High Street
Columbus, Ohio 43083
Telephone:    614.463.9441
Facsimile:    614.463.1108
Email:        daxelrod@slk-law.com
              jpetro@slk-law.com
              mwagoner@slk-law.com
              kdecker@slk-law.com

*Attorneys for Plaintiff, Jonathan N. Waters*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on March 30, 2015, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

*/s/ Katherine S. Decker*
Katherine S. Decker
