## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JONATHAN N. WATERS, | : | |
| | : | **Case No. 14 CV 1704** |
| **Plaintiff,** | : | |
| | : | **Judge James L. Graham** |
| v. | : | |
| | : | **Magistrate Judge Terence B. Kemp** |
| MICHAEL V. DRAKE, M.D., et al., | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM IN SUPPORT OF MOTION TO
## EXPAND THE SCOPE OF DISCOVERY

### I.      STATEMENT OF FACTS

#### a.      The Court's Order establishing the scope of discovery

Following a May 1, 2015 scheduling conference to establish a discovery plan for the present case, the Court ordered that "the discovery process should be limited to discovery of direct and circumstantial evidence of reverse gender discrimination related to:  (1) Lenee Buchman; (2) the School of Music; (3) adverse employment actions taken by President Drake; and (4) adverse employment actions taken by other departments or entities involved in the decision to terminate the Plaintiff."  ECF #29.  The Court also limited discovery to a four month period, to and including September 1, 2015.  *Id.*  Apparently based on a statement by counsel for The Ohio State University ("OSU") that Mr. Waters's termination was an administrative decision made by President Drake without involvement by the Board of Trustees, the Order does not explicitly mention discovery concerning relevant actions and communications by and to the Board.  OSU may therefore contend that discovery does not include the Board of Trustees.

**b.** **The Director of the School of Music describes the Board of Trustees' involvement**

We attach to this memorandum evidence that the Board of Trustees was, in fact, involved in the decision to terminate Mr. Waters's employment, consisting of a September 27, 2014 letter from Richard M. Blatti, the Director of the School of Music, to John and Peggie Waters, Jonathan Waters's parents. (OSU's website describes the Director of the School of Music as its "chief executive and academic officer.") *See* https://music.osu.edu/people/blatti.1. In the letter, Director Blatti denies having being involved in that decision himself, suggests that the decision was not made within the School of Music, and specifically refers to the Board's involvement in it. *See* DECLARATION OF JOHN B. WATERS, executed May 5, 2015 ("WATERS DEC."), Exhibit 1. (A copy of the WATERS DEC. is attached as Exhibit A.)

## II. LAW AND ARGUMENT

**a.** **The scope of discovery should be expanded to explicitly include the OSU Board of Trustees.**

As the Court already knows, this matter challenges the basis for the decision to fire Mr. Waters as director of the Marching Band. Logic suggests that the chief executive and academic officer of the School of Music would have been involved in the decision to fire the director of the Marching Band, especially given its prominence within and outside the university, and nationally – but, based on Director Blatti's letter, we know that he was not, and believes the decision was made outside the School of Music. We also know from the letter that Director Blatti believes the Board, as well as President Drake, was integrally involved in the decision. As the most senior official of the School of Music, Director Blatti is in a position to know. This suggests that information pertaining to the Board is highly relevant. Discovery should therefore be expanded

to explicitly include decisions made by the Board of Trustees, and communications by and to members of the Board of Trustees concerning the termination of Mr. Waters's employment.

Federal Rule of Civil Procedure 26(b) provides for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Vamplew v. Wayne State Univ. Bd. of Governors*, No. 12-14561, 2014 WL 266407, at *1 (E.D. Mich. Jan. 24, 2014). This includes discovery of matters that appear "reasonably calculated to lead to the discovery of admissible evidence." *Id.* (quoting *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 500-501 (6th Cir.1970).

"The scope of discovery under the Federal Rules of Civil Procedure has traditionally been quite broad." *Grace v. City of Xenia*, No. 3:05-CV038, 2006 WL3196421, at *1 (S.D. Ohio Nov. 2, 2006) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)); *Lewis v. ACB Bus. Servs., Inc.* 135 F.3d 389, 402 (6th Cir.1998); *United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 657 (6th Cir. 1976) ("The Federal Rules of Civil Procedure ... authorize extremely broad discovery") (internal citations and quotation omitted); *Briggs v. Bd. of Trustees Columbus State Community College*, No. 2:08-CV-644, 2009 WL 2047899, at *2 (S.D. Ohio July 8, 2009) ("Relevancy for discovery purposes is extremely broad") (citing *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 383 (W.D. Tenn. 1999)); *Humphreys v. Regents of University of Cal.*, No. C 04-03808 SI, 2006 WL 870963 at *2 (N.D. Cal. Apr. 3, 2006) ("defendants are not allowed to limit discovery based merely upon their theory of the case"). Rule 26 "provides for discovery of any matter that is relevant to the subject matter of the pending action." *Nw. Mut. Life Ins. Co. v. Rafi*, No. 5:09 CV 777, 2009 WL 3600273, at *2 (N.D. Ohio Oct. 26, 2009) ("Discovery requests are generally not objectionable if the information sought appears to be reasonably calculated to lead to the

discovery of admissible evidence, and Rule 26 is to be liberally construed to allow broad discovery").

Discovery rulings, like other procedural rulings, are not entirely sacrosanct and may be reversed for failure to adhere to the liberal spirit of the discovery rules. *Trevino v. Celanese Corp.*, 701 F.2d 397, 406 (5th Cir.1983); *Zahorik v. Cornell Univ.*, 98 F.R.D. 27, 31 (N.D.N.Y. 1983) (when former university employee requested "internal complaints or grievances alleging sex discrimination, investigations related thereto, and the results of such grievances or investigations" by university employer, district court held that "evidence of patterns of discriminatory treatment by an employer is relevant" and discoverable even if it may "not be determinative of the discrimination issue"); *Weinstock v. Columbia Univ.*, No. 95 Civ. 0569(JFK)(RLE), 1995 WL 567399, at *5 (S.D.N.Y Sept. 26, 1995) (when university employer offers non-discriminatory reason for personnel decision, plaintiff is entitled "to discover evidence of discriminatory intent apart from and in addition to evidence of pretext [because] [r]estricting the inquiry… prevents the plaintiff from relevant proof in a mixed motive case, that is, a case where the stated reason may be true, but gender discrimination was also a motivating factor in the defendant's decision").

The broad scope of discovery applies with equal force in the context of Title IX. *Weinstock*, 1995 WL 567399, at *6; *Briggs*, 2009 WL 2047899, at *2; *Dibbern v. Univ. of Michigan*, No. 2:12-CV-15632, 2014 WL 4964463, at *5 (E.D. Mich. Oct. 3, 2014); *Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 361 (D. Colo. 2004). In *Richardson v. Bd. of Educ. of Huber Heights City Sch.*, plaintiffs sued the city board of education under Title IX, among other grounds, for its response to incidents of hazing, harassment, and bullying. Addressing the scope of discovery applicable to the dispute, the Court reasoned: "Much of the [Board's student

4

information] is relevant under Rule 26(b)(1) to determining who did what before, during, and after the alleged incident. Other information carries Rule 26(b)(1) relevance concerning what school administrators and others did, or did not do, in response to the incident, including information about disciplinary proceedings and decisions." *Richardson v. Bd. of Educ. of Huber Heights City Sch.*, No. 3:12CV00342, 2014 WL 8619228, at *2 (S.D. Ohio Mar. 11, 2014).

Director Blatti's letter provides a sound factual basis for expansion of the scope of discovery.  And, the case law cited above, as well as numerous other cases, provides the legal basis.  Discovery should therefore be expanded to explicitly include decisions made by the Board of Trustees, and communications by and to the Board of Trustees, concerning the termination of Mr. Waters's employment.

**b.**  **The period for discovery should be extended to and including November 1, 2015.**

Mr. Waters respectfully urges the Court to extend the period for discovery, as the time presently allotted is insufficient to allow reasonable discovery.  For instance, if interrogatories were served today, May 6, 2015, responses would not be due until June 5, 2014.  *See* Fed. R. Civ. P. 33(b)(2).  A motion to compel based on objections to interrogatories would not be fully briefed until mid-July, at the earliest.  *See* S.D. Ohio Civ. R. 7.2(a)(2).  Document requests based on interrogatory responses would not be returnable until July 3, 2015, at the earliest.  *See* Fed. R. Civ. P. 34(b)(2).  A motion to compel based on objections to document requests would not be fully briefed until mid-August (*see* S.D. Ohio Civ. R. 7.2(a)(2) – all with a September 1, 2015 deadline, at present.  This obviously would leave grossly insufficient time for depositions, especially since there will inevitably be delays to accommodate the schedules of OSU officials.

The period for discovery should also be extended commensurate with the expanded scope of discovery requested by this motion.  According to OSU's website, the school has a faculty of

more than 60 professors, in addition to more than 40 full-time and part-time lecturers. *See* https://music.osu.edu/about-us. This creates the obvious possibility of a great many adverse employment actions which may be relevant to the present case.

Additionally, the Board consists of 16 trustees and two student trustees. Especially given the prominence of Mr. Waters and the Band, it is likely that a number of them were involved, and may be encompassed by document requests, and subsequently deposed. This provides an additional reason to extend the period for discovery.

## III. CONCLUSION

For the foregoing reasons, we respectfully urge the Court to expand the scope of discovery, and extend the period for discovery an additional two months, to and including November 1, 2015, as requested in the motion.

Respectfully submitted,

s/David F. Axelrod

_____
David F. Axelrod (0024023), Trial Attorney
James M. Petro (0022096)
Mark D. Wagoner, Jr. (0068577)
Katherine S. Decker (0085600)
Shumaker, Loop & Kendrick, LLP
Huntington Center – Suite 2400
41 South High Street
Columbus, Ohio 43083
Tel.:    614.463.9441
Fax:    614-463.1108
daxelrod@slk-law.com
jpetro@slk-law.com
mwagoner@slk-law.com
kdecker@slk-law.com

*Attorneys for Plaintiff Jonathan N. Waters*

6

## DECLARATION OF JOHN B. WATERS

**STATE OF OHIO**        )
                                ss:
**COUNTY OF OTTAWA**   )

      John B. Waters declares the following to be true under penalty of perjury, pursuant to 28 U.S.C. § 1746:

      1.     I am the father of Jonathan N. Waters, formerly the director of The Ohio State University Marching Band, who was fired from that position on July 24, 2014.

      2.     I know Richard Blatti to be the Director of The Ohio State University School of Music, which I understand entails being its chief executive and academic officer. I have been acquainted with Professor Blatti for approximately eight to ten years, starting when Jonathan was a graduate assistant.

      3.     Approximately two months after my son's termination as Marching Band director, I received the letter from Professor Blatti, dated September 27, 2014, of which a copy is attached as Exhibit 1. A copy of the envelope in which it came is attached as Exhibit 2.

      4.     Although I have not personally discussed the letter with Professor Blatti, I understand that Jonathan has, and that Professor Blatti acknowledged having written it.

      I declare under penalty of perjury that the foregoing is true and correct. Executed on May 5, 2015.

JOHN B. WATERS



**EXHIBIT**

A

September 27, 2014

Mr. and Mrs. Waters,

I have wanted to write for many weeks now, but, as you might imagine, my actions and words have been heavily scrutinized. In fact, at one point, my laptop was removed from my office and its contents studied — thus my choice for how I communicate the following thoughts. Regardless of these and other deterrents, I can wait no longer and I finally have some time to share what's on my mind as I recover from recent knee replacement surgery.

I'm not sure where to begin, except by saying how much I have valued the relationships I have had with Jon over the years; in fact, in many ways, I still think of him as one of my students. I can picture him as a freshman, sitting in my Symphonic Band, a talented, motivated, and amiable kid, eager to begin his musical career — hard to believe that was some 20 years ago!

Recent events have my stomach in knots, my disappointment in our Board of Trustees profound, and my belief in our University shaken. As I have told Jon, the last two months have seemed surreal ... impossible to believe ... people I have never met have shaken my world (and the people in it) to its very core!

EXHIBIT
1

2

All I have come to know and hold dear, including the people I have come to depend on ... none have escaped the broad swath of these Board actions ... most especially, Jon and the entire Waters family.

I am sure I cannot imagine what you have been through. How is it possible that we could have gone from the healthiest and most vibrant band program this university has ever experienced (largely due to the work of your son) to the current circumstances, feelings of abandonment, despair, and wrongful accusation ... in just a matter of days?

What can I say? The shocking decisions made in July were done without my knowledge, or even my input, without valuing or even reading my most recent evaluations of Jon's work, and most disappointing, without any other information than a report we all know now is filled with errors, omissions, even rumors. To say I am appalled is a gross understatement and does not describe my feelings of frustration, helplessness, and anger. My attempts to access the "Powers to Be" have been unsuccessful and, despite my own threat to resign over the way this has been handled, I have been summarily ignored. It's as if the Board answers to no one and the days of faculty governance are all in the past.

All I can offer is my most profound apologies for a university being led astray right now, in a government–regulated, litigation–minded, CEO–mandated climate obsessed with what is perceived as "compliant" at all costs. These were not the precepts on which the academy was founded and many of us struggle with what the future holds.

In the meantime, please know that I will do all I can to see Jon employed again and, even if it is not here at the university he once loved, I know he will find his stride and once again establish himself as the successful leader we all know him to be.

Compassionately,

Rick Blatti

**B**

Mr. Richard Bhatti
4261 Castleton Rd.
Columbus, OH 43220

COLUMBUS
OH 430
30 SEP '14
PM 6 1

John & Peggie Waters
17800 W. Portage River South Rd.
Elmore, OH 43416—9707

43416570700

U.S. POSTAGE
$.49

B70940930 154249
C06  09/30/14
C06  2900
60331S725
APC

43220
00707070

FOLD HERE

EXHIBIT
2