IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JONATHAN N. WATERS,

    Plaintiff,

v.

MICHAEL V. DRAKE, M.D., *et al.*,

    Defendants.

Case No: 2:14-cv-1704

Judge Graham

Magistrate Judge Kemp

## ORDER

This matter is before the court on several discovery-related issues, for which a hearing was conducted on January 19, 2016. In resolving these issues, the court applies the recently-amended standard of Federal Rule of Civil Procedure 26(b), which provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The commentary to the 2015 Amendment to Rule 26(b) notes that judges are encouraged to take an active role in identifying the appropriate scope of discovery.

Consistent with the goal of the 2015 Amendment to Rule 26(b), the court has sought to manage discovery in this matter to ensure that it is proportional to the needs of the case. See July 15, 2015 Order at 1. One area of dispute has been plaintiff's request to depose Lenee Buchman, a former cheerleading coach at The Ohio State University who oversaw individuals who allegedly created a sexualized culture on the cheerleading squad. Plaintiff alleges that Ms. Buchman was similarly-situated to him yet received more favorable treatment in that she was offered a performance improvement plan prior to being terminated. Ohio State has asserted that lengthy discovery relating to Ms. Buchman is not appropriate because the readily-ascertainable and undisputed facts establish that she was not similarly-situated to Mr. Waters. Ohio State has submitted evidence by way of affidavit showing that the disciplinary actions with respect to Ms. Buchman and Mr. Waters were made by different supervisors.

At the court's instruction, the parties have extensively briefed the issue of whether the existence of a common supervisor is a requirement or determinative factor in plaintiff's ability to prove the existence of a similarly-situated employee. See Oct. 21, 2015 Order. As was stated on the record during the January 19, 2016 hearing, the court has concluded that there is not a bright line rule regarding the need for a plaintiff to show that he and a similarly-situated employee had a common supervisor. The Sixth Circuit has emphasized that "the 'same supervisor' criterium has never been read as an inflexible requirement." Seay v. Tennessee Valley Auth., 339 F.3d 454, 479 (6th Cir. 2003). Whether the same supervisor criterion "is relevant depends upon the facts and circumstances of each individual case." McMillan v. Castro, 405 F.3d 405, 414 (6th Cir. 2005). See also White v. Duke Energy-Kentucky, Inc., 605 Fed. App'x 442, 447-48 (6th Cir. 2015) (stating that courts must make individualized determinations based on the facts of each). Thus, the sole fact that Ms. Buchman and Mr. Waters had different supervisors is not determinative, and more facts need to be gathered to determine whether the two are similarly-situated individuals. The court anticipates that once those facts are discovered, the issue will be raised at the summary judgment stage.

Accordingly, the court grants plaintiff leave to depose Ms. Buchman within 30 days of the date of this order. The court additionally finds that the proper scope of discovery would include any deposition testimony of Martin Jarmond, should the parties wish to depose him. Based on the facts on the present record and the representations of defendants' counsel at the January 19, 2016 hearing, it appears that Mr. Jarmond was Ms. Buchman's supervisor and that he made the decision to offer her a performance improvement plan. See Nov. 12, 2015 Aff. of Eugene Smith, ¶8. Thus, the court grants the parties leave to depose Mr. Jarmond within 30 days of the date of this order.

At the hearing, plaintiff's counsel made reference to the fact that Eugene Smith, Ohio State's Athletic Director, has not yet been deposed. Mr. Smith has submitted three affidavits establishing, among other things, that: Mr. Jarmond made the decision to offer Ms. Buchman a performance improvement plan, Mr. Smith made the decision to terminate Ms. Buchman prior to the completion of her improvement plan, Mr. Smith did not supervise Mr. Waters, and Mr. Smith did not participate in the decision to terminate Mr. Waters. The court will not grant plaintiff leave at this time to depose Mr. Smith. The present record demonstrates that Mr. Smith decided to terminate Ms. Buchman when he was confronted with an allegedly similar situation to what President Drake faced when he decided to terminate Mr. Waters. If Ms. Buchman was treated more favorably than Mr. Waters, she received that treatment from Mr. Jarmond rather than Mr. Smith.

The court now turns to, and denies, plaintiff's request to depose Kelly Johnson, legal counsel for the Department of Education Office of Civil Rights ("OCR"). Plaintiff asserts that Ohio State fired Mr. Waters in an effort to make him a scapegoat and that this would appease OCR (which was nearing completion of a compliance review of Ohio State) to see Ohio State react swiftly and strongly to Title IX complaints. Plaintiff contends that gender-based animus caused Ohio State to exaggerate or falsify facts in the Title IX report (known as the Glaros Report) that was relied upon as grounds for terminating Mr. Waters. Plaintiff further asserts that, if allowed to depose Ms. Johnson, she could testify to the manner in which Ohio State used the Glaros Report (or the importance it ascribed to the Glaros Report) to show OCR how tough Ohio State was in responding to reports of sexual misconduct at the University. The court finds that a deposition of Ms. Johnson is not likely to lead to facts that would add to or advance plaintiff's theory in this case. Whether Ohio State later used the Glaros Report to appease OCR, even if true, does not add to the existing claim that the Report was pretext for discriminating against Mr. Waters. The basis of plaintiff's claim for pretext is his assertion that Ohio State distorted the facts and findings contained in the Glaros Report in order to justify the termination of his employment. Whether or not Ohio State also used the Report to appease OCR adds nothing to his underlying claim of pretext.

Plaintiff also requests discovery of all communication between Ohio State and OCR, again arguing that such documents will show whether Ohio State made a scapegoat of Mr. Waters before OCR. For the same reasons the court finds that the deposition of Ms. Johnson will not lead to relevant evidence in support of the gender discrimination claim, the court finds that the communications between Ohio State and OCR will not lead to discovery of evidence relevant to plaintiff's claim. However, the court notes that plaintiff has already received a substantial amount of the discovery he requests. Through a Freedom of Information Act request, plaintiff received approximately 800 pages of communications between Ohio State and OCR. Further, defendants' counsel has agreed to produce such communications between the dates of July 24, 2014 (the date of the termination of Mr. Waters's employment) and September 8, 2014 (the date of the Final Resolution Agreement between OCR and Ohio State).

Accordingly, plaintiff's motion to expand the scope of discovery (doc. 68) is granted in part and denied in part. The depositions of Ms. Buchman and Mr. Jarmond shall be taken within 30 days of the date of this order.

The parties shall have until March 15, 2016 to file any motions for summary judgment.

s/ James L. Graham
                                                            JAMES L. GRAHAM
                                                            United States District Judge

DATE: January 20, 2016