IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JONATHAN N. WATERS,       Case No: 2:14-cv-1704

    Plaintiff,       Judge Graham
v.

MICHAEL V. DRAKE, M.D., *et al.*,       Magistrate Judge Kemp

    Defendants.

ORDER

This matter is before the court on the objections of plaintiff Jonathan Waters to the magistrate judge's December 8, 2015 discovery order and on the magistrate judge's February 4, 2016 discovery order. The district court may set aside any part of a magistrate judge's order only upon a showing that the order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A).

The December 8, 2015 order was issued following the magistrate judge's *in camera* review of documents that plaintiff had moved to compel the production of. Defendant The Ohio State University asserts that the documents are covered by attorney-client privilege or the work product doctrine. Pertinent to the matter at hand, the magistrate judge found that certain documents containing communications between Ohio State and its public relations consultants, whether privileged or not, are not relevant to plaintiff's reverse gender discrimination claim under Title IX.

Plaintiff has made two objections to the December 8, 2015 discovery order. First, he argues that the magistrate judge erred in holding that Ohio State's communications with its public relations consultants are not relevant. Plaintiff argues that the communications may be relevant to the manner in which Ohio State treated him in order to achieve the desired effect of showing the Office of Civil Rights ("OCR") how Ohio State, in response to the allegations of a sexualized culture within the marching band, reacted swiftly and strongly by terminating a man. Plaintiff contends that the communications may show that Ohio State made plaintiff a scapegoat in an effort to appease the Office of Civil Rights.

The court has thoroughly examined the documents submitted for *in camera* review and concurs with the magistrate judge's finding that they are "as one might expect, exactly the type of communications which a public relations firm would make in this situation," advising "the

University and its personnel about how to put the best spin on its decision." Doc. 96 at 6. Although a handful of the communications evince an awareness of Ohio State's need to complete its investigation of the marching band within the time frame allowed under Title IX, the documents do not contain even a hint that Ohio State's handling of the investigation or its decision to terminate Waters was in any way influenced by Waters's gender or a perceived need to appease OCR or to make an example or scapegoat out of Waters in front of OCR. The court thus affirms the magistrate judge's conclusion that the communications between Ohio State and its public relations consultants are not relevant to plaintiff's claim.

Plaintiff's second objection was that the magistrate judge's initial order did not address the issue of whether Ohio State had waived attorney-client privilege. Plaintiff had argued that Ohio State waived the privilege as to communications related to the Title IX investigation report (the "Glaros Report") by publishing the Glaros Report and by putting it at issue in this litigation. The court remanded the matter to the magistrate judge to consider the waiver argument, and the magistrate judge held in his February 4, 2016 order that Ohio State had not waived its privilege:

> The fact that the report, itself, does not appear to be either an attorney-client communication or to reveal all or part of such a communication, makes it somewhat hard to understand why Mr. Waters contends that by simply disclosing the report, Ohio State somehow waived any privilege which attached to communications between Mr. Glaros and attorneys for the University which preceded the final draft. As the court noted in Roth v. Aon Corp., 254 F.R.D. 538, 541 (N.D. Ill. 2009), unless the communication does not at the outset meet the elements of attorney-client privilege, . . . a draft of a document which becomes public record does not thereby lose that privilege." Otherwise, clients with a public reporting obligation could never consult in confidence with their attorneys about the contents of the report. Nothing in the Court's review of case law suggests that the law works in this way.
>
> . . .
>
> [T]he Court agrees with Ohio State that it did not voluntarily inject issues about the adequacy of its investigative process into the litigation. The Glaros Report features prominently in the complaint, which characterizes it as a "deeply flawed and incomplete report, skewed and distorted more to appease the Department of Education than to afford due process . . . ." Complaint, Doc. 1, ¶4. It would be strange indeed to hold that Defendants could attempt to rebut that assertion only on the condition that they waive the attorney-client privilege for drafts of, or communications about, the Glaros Report. Certainly, if they chose to reveal some privileged communications as part of an effort to validate the report, they would have to, in fairness, reveal them all, but that is not what Mr. Waters is claiming, and there does not appear to be any evidence in the record to support such a claim.

2

> Consequently, the Court finds no basis for ordering the disclosure of any privileged communications relating to the Glaros Report.

Doc. 113 at 4-5, 6-7.

Plaintiff has not made any specific objection to the February 4, 2016 order, and after a full review of the parties' arguments, the cited legal authority and the magistrate judge's order, the court concurs with the magistrate judge's analysis and affirms his conclusion that Ohio State has not waived its attorney-client privilege.

Accordingly, the court finds that neither the December 8, 2015 order nor the February 4, 2016 order are clearly erroneous or contrary to law and plaintiff's objections (doc. 103) are overruled.

s/ James L. Graham  
JAMES L. GRAHAM  
United States District Judge

DATE: March 23, 2016